Radcliff, J.
In our law, freight is considered as a distinct subject of insurance. It is never deemed to be included in a policy, either on a ship or cargo. The different interests which form the subjects of insurance, are regarded as several in their nature, and independent of each other. From this single consideration, I think it follows, that an insurer upon a ship can in no event be liable for any damage or loss sustained by the freight or cargo which he did not insure, and e converso, in case of the loss of the ship, he can in no event gain by means of the freight or cargo.
The effect of an abandonment is merely to substitute the insurer in the place of the insured. It bears no analogy to a sale, which is an original and absolute contract, and at once ascertains and fixes the rights of the parties. An abandonment is no contract, but the exercise of a right derived from a previous contract contained in the policy. Its operation must, therefore, be regulated by the nature of the act, and the just construction of the policy. Considered in this light, I can discover nothing in support of the plaintiff’s claim to recover what he did not insure. Indeed, the rule appears to be sound and invariable, that on the one hand the insured can never recover more than an indemnity for his loss, and on the other, the insurer, on an abandonment, can never be entitled to receive more than the subject he insured. The plaintiffs insured the ship only, and they received the premium for that insurance ; they never could be liable for any other loss than that sustained by the ship, and of course cannot be entitled to claim any thing beyond the value of the ship, at the end of the voyage, for the performance of which they have ^undertaken by the policy, and [*379] for which they have been paid. ' To give them more, ,would be to give them a compensation without a risk, something for nothing.
On accepting the abandonment, the insurers stepped into the place of the insured, and by substitution, acquired the same rights, and became subject to the same duties in re- *452 la-tion to all concerned. It is true, they became the owners of the ship, but they could only take her cum onere, subject to the situation in which she was placed, and the engagements . of the voyage they had insured, and of course, to the rights of all parties concerned in the adventure. Their premium was the adequate consideration for this. In like manner, the insurer upon the cargo, in case of an abandonment, takes it subject to any burden that may exist, and to the rights of all parties. He is boundxto pay the freight, if any be due, and to contribute to all necessary expenses, as the owner would have done. So also the insurer upon freight, under similar circumstances, is liable to contribute to a general average, and to submit to all proper deductions ; and in either of those cases, the insurer, after an abandonment, can claim no more than what remains of the subject he has insured. ■ This was well illustrated by the case stated on the argument, that the ship may belong to one person, the freight to another, and the cargo to a third. Suppose, in that case, the insured upon the ship to abandon to the underwriters, could they, by any construction, be justly entitled to the freight which originally was, and continued to be the property of another 1 They plainly could not, and it exemplifies the independent nature of those different subjects of insurance, and places them in their true light. To treat them differently, by connecting and blending them together, would lead to uncertainty and confusion, and render it impossible to form a consistent and uniform rule on the subject.
The circumstance that the insured, in the present case, is the owner of both ship and freight, can make no difference. If they are distinct interests, it is immaterial [*380] *whether they belong to one or to different persons.
The whole adventure of a voyage, (ship, freight and cargo) may, and frequently does belong to the same person, but I believe it was never imagined to follow from hence, that an abandonment of the one could affect' the other. The rules of law must be fixed and uniform, and cannot depend on. such contingencies.
*453 The only authorities on the subject are collected from the French law, (2 Bmerig. 219, 221, who cites Koccus,) and appear to be inapplicable to our own. They regard the freight as accessory to the ship, and in pursuance of the maxim, that every accessory follows its principal,’ they hold, that an abandonment of the ship carries:with it the right to the freight. The application of this maxim in the French law, seems to result from an express ordinance of Louis XIV. (2 Val. 59,) by which it is declared, that freight is not an insurable interest. So far from its being’considered a distinct object of insurance, as with us, the policy of their law does not permit it to be insured at all. In practice, however, the freight, with them, although not insured eo nomine, is usually added to the value of the ship, and blended in the same policy. It therefore naturally follows, that an abandonment on such a policy would transfer the title to the freight, as well as to the ship, and they may with propriety, in their law, be considered as attached to, and inseparable from each other. But with us it is not so; the freight is not an accessory; it is in itself a principal, and treating it as such, a different rule ought to prevail.
I am, therefore, of opinion, that the" plaintiffs are not entitled to recover any part of the freight, and that it belongs to the person who would have been entitled to it, if the voyage had been performed without any impediment.
Kent, J.
It does not appear to be a settled point in the English law, what is the operation of an abandonment upon freight. There is no case that I have met with in which the point came into discussion, as it respected the insurer.
*In Luke v. Lyde, (2 Burr. 882,) a suit was sus- [381] tained by the owner of the vessel, notwithstanding his abandonment, against the shipper for a rateable freight earned previous to the abandonment. But in that case the right of freight, as between the insurer and insured, was not determined, nor did it come into view. The whole attention of the court appears to have been directed to the liableness of the shipper; and whether the plaintiff recovered for him *454 sel'fj or as' trustee for- the insurer, or what would have been-the opinion of the court, if the insurer and the plaintiff ' could.have interpleaded before them in order to determine to-which of them the freight so due belonged, we cannot learn from the case.
The present question seems, therefore, to be res integra, áñd it must be determined from the consideration of the. nature of abandonment, and from the application of known and analogous principles in the law.
The freight in the present cáse belonged to the insured, who owned the ship, add who abandoned her. We are not, therefore, to ■ examine what would > be the operation of an. abandonment- of the ship, if the ship should at the time* belong to a different person. Here the same person was owner of both ship and freight. ■ < -
Abandonment is a cessation of the right of the thing insured. If accepted, it is equivalent to an absolute sale and delivery of the property, and the insurer stands in the place of the insured, and is entitled to all the advantages of that situation. He must, consequently, become entitled to the freight subsequently earned, for freight is incident to the. ownership of the vessel, and follows it as closely as rent does the reversion. All the subsequent charges of the voyage must be borne by the insurer, and, as he Etakes the burden, he ought likewise to reap the advantage. And upon: principles equally strong, the insurer must be entitled to the freight earning or accruing at the time of the abandonment, in like manner as if a -person sell or mortgage, devise or surrender the land,, after the crop sown, or if he as-[*382] Sign the reversion before the' rent becomes ^payable, the emblements in the one case, and the rent in the other, will pass with the land. If any portion of the freight had already become due, the same would undoubtedly remain with the insured, and not be affected by the abandonment. But the growing freight must pass with the ship, for want of a precise and definite rule of apportionment.-. The case of a voyage partly performed, and broken or diverted by the perils of the Sea, is not susceptible of an accu- * *455 rate adjustment of a rateable.freight. And although instances may be supposed, in which few difficulties would arise, yet the rules of commercial law ought to be general and permanent, capable of being ascertained with certainty, and of being applied with precision.
Freight is with us a distinct insurable interest, and this opinion has no tendency to render it less so. But although a distinct, it is so far a qualified interest, when belonging to the same person who owns the ship, that if he abandons the one, he must be considered as voluntarily relinquishing the other. The insurer is substituted for him by his own act, and succeeds to all his rights as owner of the ship. Freight may be a distinct subject of insurance without losing in other respects its quality as an incident. Tt is not necessary that it should be detached from its principal, beyond what is requisite to render it insurable. It must still in a great degree, be considered as merely appurtenant to the ship, and if distinctly insured, it is very questionable whether the owner can preserve his claim against the insurer of the freight, if he abandon the ship. (But see 3 Caines’ R, 16. 1 Johns. R. 333. 3 Johns. R. 49.)
In the case before us, the freight must, be considered as almost wholly earned subsequently to the abandonment, and if any portion of it was earned before, there was none due at the time. The freight was merely earning, and the right to it was inchoate, and not absolute, which it could only have been at the delivery of the cargo, upon the completion of the voyage.
I am, therefore, of opinion, that the plaintiffs are entitled to judgment for the whole sum found by the verdict.
*Benson, J.
Previous to an immediate consi- [*383] deration of the question in this cause, I would state, “ that if a freighted ship becomes accidentally disabled on its voyage, (without the fault of the master,) the master has his option, either to refit it, (if it can be done within a convenient time,) or to hire another ship to carry the goods to the port of delivery. If the merchant disagrees to this, and will not let him do so, the master will be entitled to the whole *456 freight of the foll_ voyage." If the ship is so disabled that, the master .cannot carry the goods in her, or if he cannot find a ship "to carry them to the port of delivery he .shall still be paid his freight, in proportion, however, only, to what he has performed of the voyage; but the merchant may abandon all the' goods, and then he is excused freight.” This is the language of Lord Mansfield, in the c.ase of Luke et al. v. Lyde, (Burr. 882,) and here as well as there, by the merchant is intended the freighter and owner of the goods, and by the master, his principal or constituent, also the owner of the ship. From this doctrine, considered as premises, I deduce these consequences, that although the ship cannot carry the goods, and though the master cannot find another to carry them, yet that he may, nevertheless, retain them until he is paid the freight, and that if the merchant refuses to pay it, on the goods being tendered to him, he shall be deemed to have abandoned , them; and if he take the goods out of thé hands of the master, (and whether on a formal tender of them, or otherwise, is- not material,) without paying the freight, the law will imply a promise by him to pay what may have accrued of it; but if the goods shall have come to him by a .voluntary delivery only, he may, in such case, rebut the implication by proof in fact, that there was another and express contract, respecting, the freight, between him and the master, at the time of the delivery of the goods, and in consequence of which, he accepted them, or that the master then waived it. •, i
These appear to me to be the whole of the relative rights- and duties of merchant and master, requisite to be [*384] .*noticed, and I will only subjoin, as connected with the consideration of them, in reference to the present case, that I do not think the case above cited ought to be received as deciding further than that the merchant may render himself liable on the implied assumpsit I have mentioned,., to pay the freight, .and as prescribing a rule to ascertain the proportion or rate of it. It is true, that the suit there was by the master, the assured of the ship, and he had abandoned, and the assurer had accepted her ; both the court and counsel, *457 however, séem to have been principally, if not wholly, occupied in examining merely, whether the merchant, inasmuch as the goods had been delivered to him at a place to which she had come before the full voyage was performed,, was still liable to pay freight for them ? It was held that he was, “ because it was not owing to any fault in the master, that the ship had come "to the place where the goods were so delivered, and when he took the goods he did not require the master to find another ship to carry them to the port of delivery.” And a rule for the apportionment of the freight is thereupon given ; but the further question, whether the freight was to be deemed as having accrued for the benefit of the assured or Of the assurer on the ship, was, scarcely, if at all, brought into view, much less discussed and determined. Indeed, the reason for the adjudication, as quoted, shows most manifestly the point intended to be adjudged, so that it does not appear that the interfering claims of the assured and the assurer to the freight have ever fully and distinctly occurred, or been submitted, until in the'present case.
The question on which these respective claims depend, I conceive to be, whether, when a ship shall be abandoned to the assurer, and be accepted by him, the freight she was earning at the time of the accident, in consequence of which she was abandoned, does not also pass with her to the as-' surer. On this question, my opinion is in favor of the as-surer, and I shall very briefly state my reasons for this opinion.
*The right to" the freight is not extinguished by [*385] the abandonment of the ship, and if it does not pass to the assurer, it must still subsist in the assured, and if the latter, then-the assurer does not, by the abandonment, acquire a perfect or absolute, but only an imperfect or modified right in the ship. He takes her subject to a right in the assured to as much of the freight as can by any means, reasonably practicable by the assurer, still be eventually made, even as for the full voyage. The law will consider the right of the assured to the freight as the end, and will necessarily give him every requisite mean, to it, comprehending the instru *458 mentality of the assurer, which, if he withhold, the law will' then further give to the assured a remedy against him by suit, for the nonfeasance. The right, and its remedy, as deduced from it, are, in my conception, correlative, the oné necessarily implying the other; for, to suppose a right in one person, as reserved in law to a possible eventual benefit, and to suppose at the-same'time, that the benefit may depend wholly on the volition of another, whether it shall ever come to exist, appears to me to be a legal solecism.- Thus, to exemplify the result ,in the case under consideration; however, the plaintiffs might have calculated it most eligible for them to sell the vessel at Rivadeo, for what she would fetch, and to have sent instructions there for that purpose, they would ha ve been prevented from exercising this kind of free agency; any calculation of the last loss upon the whole, although ever so just and advisable, would not have served as an excuse, which must have .been of-a nature to have answered for all the other underwriters, however numerous or variously circumstanced they might have been; otherwise, it would have been indispensable on the plaintiffs tú have refitted the ship so as to bring the goods to New York,, in order, that the freight on them might be received by the assured.- This would be an instance of putting the burden on one for the advantage of another, without parallel; and it may [*386] easily be conceived to ^happen, that assurers,, rather than subject themselves to such a hardship, would refuse to accept an abandonment, however justly ,the assured might be entitled to make it, and who would also be obliged to persist in it, in order to his recovery for a total loss ; so that the property becoming thus derelict, would inevitably become utterly lost between them, when possibly by the seasonable interposition of either, a considerable portion of it might have béen saved. ■ .
These considerations appear to me sufficient to show that the supposed right in the assured to the freight, after an abandonment of the ship, can néver be made to consist with right reason; and the least reflection will suggest, that I have not' pursued the case into many other .consequences or questions *459 which may take place. I will state one only,, and also in reference to what might have happened in the present instance. Suppose that the ship had been lost oh the passage from Rivadeo to New York,, and as there would not then have been a freight, out of which the plaintiffs could reimburse the sum they might have advanced for refitting the ship, could they have recovered it from the assured ? If not, there the hardship of an assurer’s case will appear to be extreme.
The mistake on this subject I conceive to be, in supposing that as the ship and freight may, in the first instance, be insured as distinct interests, they continue as distinct interests to every other purpose throughout, until the event either of the loss, or of the safety of the freight, shall have happened ; without distinguishing that the ship is the principal, or subject, or thing which is to produce the freight, and that when the assured abandons the ship to the assurer, he transfers thereby to him his power over the ship, as the principal, and with it, his power over the freight, the accessory or incident; he transfers his power over the cause, and, consequently, his right to the eventual effect, if any. These interests may be likened to an interest in the land, and the emblements. By a special contract, the land may be transferred,, and the emblements *may be reserved, otherwise they [*387] will pass with it. If the owner dies intestate, the lands descend to his heir; but the emblements go to the personal representatives, and the law accordingly gives them a power over the land. They may enter on it, to preserve, promote, gather, and remove the crop. Suppose the vendor of land was, by a special contract, to insure to the vendee, that the land, if sold, should always sell for a certain price; so that the vendee might, at any time, abandon the land to the vendor at that price; if he abandoned it while a crop was growing on it, and if the vendor should accept it, it cannot be doubted but that the vendor, (the assurer,) would, and as under the original contract of insurance, be entitled to the crop, equally as if he had, on a general or ordinary contract of purchase and sale, repurchased and become repossessed of the land. In short, and which is the foundation of my opin *460 ion, I conceive, that by the abandonment of a ship by the assured, and the acceptance of her by the assurer, the property in her passes as fully and absolutely,, as it would on a sale and delivery of her. As a consequence from this; it undoubtedly follows, that an .assured, if he abandons, or in any other manner transfers the property and possession of the ship; before notice of the: event, in consequence of which the freight is incontrovertibly lost, he will be deemed to have relinquished any insurance he may have made on the freight. If he means to save his insurance on the freight, he must, as it were, stick'to the wreck of the ship to the last. (But see Livingston v. Columbian Insurance Company, 3 Johns. R. 49.)
1 am, therefore, of opinion, that the plaintiffs are-entitled to recover the whole freight.
Lewis, J.
In the examination ofvthe question presented for consideration in this cause, it is extreinely difficult to discover either principles or precedents that will afford satisfactory grounds for a just decision. Embarrassments arise on either side. To decide against the plaintiffs appears inequitable, since we should deprive them of the. earnings of the ship, which, after the abandonment, became their [*388) property. On the other hand, if *we. say that the plaintiffs must recover, the insurer on freight, who, it is to be presumed, has paid the amount to the Owner, and has a just claim on the subject for his reimbursement, will-' be injured. A loss must certainly fall on one of two parties, equally innocent, and having equal claims. It is to be regretted, that the court are not of one opinion on this occasion, foi’ .it is a case in which it is of more importance that the ride should be fixed and certain, than what such rule should be; When all parties know the extent of the hazard they are to run,' there will be no cause for complaint, nor ground' for any objections of injustice.
The case of Luke v. Lyde, is the only one to be found in the books,- that looks to the question now before the court; but it does not by any means reach the present case. As far,-however, as that case goes, I consider myself bound "by *461 it. Thus much is established by that case: that the owner of the ship is entitled to freight pro rata itineris, to the point at which the voyage is broken up, and his right to abandon accrues. Where the freight is insured, the insurer of the freight steps into his place ; subject, however, to all the consequences of his right to abandon the ship, which is still reserved to him. At the time the right to abandon arises, the freight up to that period becomes due and demandable. The freight that subsequently accrues, must follow the destiny of the ship, as an accessory. It is objected to the authority of this case, that the only point in it was, whether freight was payable, not to whom it was to be paid. I do not consider this objection as well founded, for we cannot presume that the owner would have had judgment for the freight, had it been due to the underwriters.
It is, perhaps, to be wished, that our law on this subject was similar to that of France, where freight is hot allowed to be a distinct subject of insurance; but the owner to cover his freight, adds it to the value of the ship. In England, and in this country, it is otherwise; and freight, being a distinct subject of insurance, the doctrine *of [*389] abandonment and the benefit of salvage must attach to it, as far as the nature of the subject will permit. That they cannot to the same extent as in policies on ships or goods, will, I think, be manifest from the following cases.
Should the insurer on freight, in a case circumstanced like the present, be entitled to the freight after a peril has occurred that authorizes an abandonment of the ship, he could have a right to insist (if the ship be repairable) that the insurers on the vessel should repair her, and permit her to proceed on the voyage : And should' they refuse, he would have a right of action against them: Should he be owner of the ship also, and so his own insurer as to freight, this absurdity would follow; that he would have to controvert and deny, what as owner of the ship he had asserted and relied on, namely, her inability to prosecute the voyage. Should the ship be so disabled, as to be irrepairable, and another vessel be procured to transport her cargo to the port of discharge, her insurer *462 would be obliged to pay the hire of such vessel, while the owner - of the first ship would be entitled to the freight. Thus the insurer of the ship would become the insurer of the freight also, without any consideration for the risk, or any engagement for that purpose.
My opinion, therefore, is, that the freight in this case ought to be apportioned, and that the plaintiffs should recover so. much only as was earned subsequently to the peril incurred, that caused the abandonment.
Lansing, Oh. J. was of the same opinion.
The opinions of the judges being- thus divided, Benson, J. and Kent, J. being in favor of the plaintiffs’ claim for the whole freight, agreed with Lansing, Oh. J. and Lewis J. in giving judgment for the plaintiffs, for the amount of the freight earned pro rataitineris ;■ and judgment was given accordingly.
Judgment for the plaintiffs, for the freight pro rata. [*390J *N. B. The Court said, that if the plaintiffs should elect still to proceed for the whole freight, they would direct the verdict to be set aside, and grant a new trial, in order that a special verdict, or an exception might be taken to the opinion of the judge who might try the cause, so that the question might be brought before the court for the correction of errors; and in that case, the costs should abide the event of the suit.(a)

а) The case was, afterwards, by consent of parties, put into the form of a special verdict, and a writ of error was brought into the court for the correction of errors, where, in February, 1801, the judgment of the court, as above stated,' for the freight earned subsequent to the abandonment, ór pro rata itineris, was affirmed.