* Putnam, J.,
delivered the opinion of the Court. *310 The first question which this case presents is, whether there has been any loss for which the defendants are answerable.
They have undertaken to pay for the freight if, by reason of any of the perils enumerated in the policy, the ship has been prevented from earning it. On the part of the defendants, it is contended that the goods laden on board this ship at Amsterdam have all been delivered at Philadelphia, to which port they were destined ; and that all the freight has been paid, which would have been paid if she had not met'with any damage or delay in the course of the voyage.
But, in point of fact, the ship has, in her passage, received so much damage by the winds and seas as rendered it necessary for he- to pul into an English port to repair; and there it was found that her repairs greatly exceeded half of her value. There was therefore a constructive total loss of the ship; which rendered it lawful for the assured to abandon to the insurers of the ship. In virtue of that, they became owners of the ship for that voyage; and perhaps they were under no obligation to carry the goods to the port of delivery. However that might be, the master, acting for the benefit of all concerned, did complete the voyage. The owners of the ship, after her repairs, must be considered as bound by his act, and entitled to all the benefits which would have followed if they had been in England when the abandonment was made, and had employed their ship to carry the goods to the port of delivery, (a)
But to all legal purposes, after the constructive total loss, the ship, repaired and rebuilt at an expense exceeding half her value, must be considered as a new ship; as much so, to every intent, as if the former owners and the insurers of her had procured a new keel, and had wrought up the iron and timbers which could have been obtained, into a vessel of a different kind and form. If that had been done, and the master had procured such new vessel to carry the goods to the port of delivery, no one would * have doubted but that the owners of the new vessel would have been entitled to the earnings at least from England to Philadelphia.
We must consider the ship, upon which the goods were originally *311 laden, as much lost as if it had sunk to the bottom of the ocean, or had been burnt to ashes. An event has happened, within the perils assumed by the defendants, which has prevented the old ship from carrying the goods to the port of delivery. The plaintiffs are therefore to recover.
We are next to consider to what extent the defendants are answerable. The facts agreed prove that the freight was greatly over valued ; and it is contended that the policy is to be opened. Overvaluation is not conclusive evidence that the policy was with a view to gaming or wagering. It does not appear that, when this policy was subscribed, the plaintiffs knew the quantity of goods which the ship was to take on board at Amsterdam, or the price which was to be paid for their transportation to Philadelphia. In this state of uncertainty, the parties agree that it shall be valued at a sum which eventually proves to be three times the value of the carriage of the goods. But we do not perceive that the estimate was unfairly made The defendants were willing to take the premium upon that amount; and we do not feel at liberty to disregard the agreement which was made by the parties, to prevent litigation, and upon good consideration. It is not found that the ship did not take all the cargo which could have been procured at Amsterdam. In this it differs from the case of Forbes vs. Aspinall, (1) which was cited by the counsel for the defendants.
That was an insurance at and from a port or ports in Hayti to Liverpool, upon freight to be earned by a seeking ship, intended to go from port to port in Hayti, to barter her outward for a return cargo. The freight was valued. The ship had arrived at Hayti, and commenced her trade by exchanging a small part of her outward cargo for a few bales of goods which were taken on board. She proceeded to another port, and was lost with a great part of her outward cargo on board, and of course before she had completed the object of her voyage. The court opened the policy in that case, considering it as predicated upon all the goods which, it was expected, would have been procured for a return cargo. But the court say that, “ where there is a total loss, by any of the perils insured against, of the whole subject-matter of the insurance to which the valuation applies, viz., of all the intended freight, where the insurance was on freight, the assured shall recover according to the sum specified in the valuation.” Now, in the case at bar, the whole subject-matter to which the valuation applied has been lost, (a)
*312 We are next to consider what disposition is to be made of the salvage. To whose use shall that money be applied ? Shall it be considered as belonging to the owners, of the ship, to the exclusion of the insurer of the freight; — or shall he have a proportion pro rata itineris 1
It is to be considered that freight is a distinct subject of insurance. The owner may insure his ship, the freight, his goods, and the profits expected to arise upon them, or any of those subjects, at his election; and the rights which attach from the insurance of one, shall not be lessened or varied, in consequence of causing insurance to be made, or not to be made, upon the other. For example; — if the insurance be upon freight, and a loss happens, the assured ought not to recover less or more, in consequence of having, or not having, procured insurance upon his ship. The undertaking of the insurer upon freight is, that he will pay it if the ship, by any of the perils enumerated in the policy, shall be prevented from carrying the goods to the destined port. When that event happens, the question, in every case, is, whether the loss is total or partial. If the ship should have carried the goods to a port within one day’s sail of the port of destination, but should be disabled, by the perils in the policy. from completing her voyage, the assured would he * entitled to recover for the loss. In such case, if the assured should have received ninety per cent, for carrying the goods so far as the port where the ship was obliged to stop, it would be evident that he had a right to recover only for a. partial, and not for a total loss. The assured, in that case, would have a just claim to recover only for the value of the freight from the port where the ship stopped to the port of delivery. If, however, the owner had procured insurance upon his ship, he might, in such case, abandon his interest in the ship, and recover for a total loss.
This brings us to the question, to what time the abandonment of the ship shall relate. And we are, upon consideration, of opinion that it is to the time of loss, and not to the commencement of the risk. The undertaking on the part of the insurer upon the ship is, that he will pay for it if it should be lost by the perils in the policy. Until that event happens, the property remains in the assured ; and the freight, or her earnings, belong to him until that time, if he stands his own insurer' for the freight; otherwise, to the insurer on the freight. But after the loss has happened, the insurers, in virtue of the abandonment, become the owners, and are liable to the repairs and expenses, and entitled to the earnings, of the ship.
A different rule would be productive of great injustice. By the abandonment of the ship, the insurers stand in no better situation than the assured, in respect to the vessel, but succeed to his rights *313 Now, suppose the owner shall stand his own insurer for his ship, and shall insure his freight. If we would apply the rule, that freight is incident to the ship, to the extent of giving the insurer her earnings before the loss, then the owner might retain the freight, pro rata itineris, for his own use, and compel the insurer on the freight to pay for a total loss; and thus, instead of recovering an indemnity, he might obtain nearly a double satisfaction.
This subject has come under the consideration of the English courts, in the cases arising on the Russian * embargo; (2) and also of the Supreme Court in Pennsylvania ; (3) but not, as we are aware, definitely settled by them. But the Courts in New York have, and we think rightly, decided upon the principles which have governed our decision. (4) (a)
There being no dispute concerning the general average, it is to be considered as settled, as by the statement which came up in the case. And our opinion is that the salvage which the plaintiffs have in their hands, amounting to 1028 .dollars, be distributed as follows : to the defendants, as insurers of the freight, a reasonable sum for carrying the goods from Amsterdam to Plymouth, pro rata itineris; and the residue is to be divided among the owners of the ship; two sevenths of which, belonging to the defendants in virtue of the abandonment to them as insurers on the ship, is to be allowed to them, and judgment is to be given for the plaintiffs for the balance of the amount subscribed by the defendants, according to the valuation in the policy.

.) Schieffelin vs. N. Y. Ins. Co. 9 Johns. 26. — Leavenworth vs. Delijield, 1 Caines, 573.— United States Ins. Co. vs. Lenox, 1 Johns. Cas. 377.—2 Johns. Cas. 443.— Davy vs. Hallet, 3 Caines, R. 20.— Simonds vs. Union Ins. Co. 1 Wash. Cir. C. R. 443. — See Splidt vs. Bowles, 10 East, 279.— Center vs. Am. Ins. Co. 7 Cowen, 564. — Hammond vs. Essex F. M. Ifts. Co. 4 Mass. Rep. Y96. — Bat no distinction is made between the freight earned prior and subsequent to the loss or abandonment. The whole passes to the underwriters.— Case vs. Davidson, 5 M. & S. 79. —2 B. B. 379. — 3 Kent, Com. 333, 2d ed.

 13 East, 323.

,) Pede vs. The Merchants' Ins. Co. 3 Mason, 70, 48. — Center vs. Am. Ins. Co 7 Comen 564.— 4 Wendell, 45.

 5 East, 397, M' Carthy vs. Abel. — 7 East, 30, Sharp vs. Gladstone.

 Binney, 437, Armroyd vs. Union Ins. Company.

1 Johns. Cases, 377, Union Ins. Company vs. Lenox. — 3 Caines, 20, Davy v i. Hallet. (a) See Case vs. Davidson, 5 M. & S. 79.—2 B & B. 379. — Contra, 3 Kent, Comn. 333, 2d ed.