ALBANY,
Dec. 1829.

Dickey
v.
American Ins.
Company.

DICKEY *vs.* AMERICAN INSURANCE COMPANY of New-York.

Where a vessel insured against the perils of the sea on a voyage from the *East Indies* to *Holland* was greatly damaged, and put in to the *Isle of France,* from whence advice was sent to *New-York* to the assured, who forthwith abandoned the vessel to the underwriters there as for a *total loss,* giving notice on the *sixth day of July,* and in the mean time the master had caused the vessel to be repaired, so that on the *twenty-eighth day of June* she sailed from the Isle of France, being tight, staunch and strong, bound to a port in Holland, where she subsequently arrived in safety, *it was held,* although a technical total loss had originally occurred, that the plaintiff was not entitled to recover as for such loss, but could recover only for a *partial loss.*

If a *master* of a vessel, in the exercise of his legitimate duties as the agent *of whom it may concern,* converts a *total* into a *partial* loss before abandonment, the fact that the loss is no longer *total* takes away the right to abandon; and the result is the same where a *total loss* is converted into a *partial loss,* by the acts of a stranger.

If the vessel is abandoned while the loss continues total, all the intermediate acts of the master are the acts of the underwriters; but if the property be restored before abandonment, the right to abandon is gone, and the acts of the master will be considered the acts of the assured.

While it is doubtful whether the assured will or will not exercise his right of abandonment, the acts of the master cannot destroy the right to abandon.

Where repairs are made by the underwriters or by the master as their agent, and the voyage is not lost and the vessel arrives in safety, the assured cannot abandon.

It is a well settled rule of *American* insurance law, that if a vessel is damaged by any of the perils insured against, so that the necessary repairs to restore her to her former state and render her sea-worthy will exceed *three fourths* of her value before the disaster, the owner is not bound to repair, but may abandon as for a total loss. This is usually called an injury to more than *half her value,* because one third of the expense of repair is deducted, new for old.

ERROR from the supreme court. This was an action on a policy of insurance on *one half* the body, tackle, apparel and other furniture of the ship *Frances Henrietta,* the whole valued at $20,000, on a voyage from *Antwerp* to one or more ports in the India or China seas; and at or from the port or ports of lading to *New-York,* or to a *port in Europe* not north of Holland. The vessel sailed from Batavia in the East Indies on her return voyage on 24th January, 1819, bound for Antwerp with a full cargo, most of which belonged to the

plaintiff, (Dickey.)  From the 20th of February to the 3d of
March, the vessel encountered a succession of squalls, gales of wind and heavy cross seas, by which she became very leaky,
and it was deemed impossible to navigate her to Europe in her then condition, and the master put into Port Louis in the Isle of France, where she arrived on 7th March, 1819, and a survey taken, but before it was completed the vessel was driven on shore by a hurricane, and sustained further injury. Several surveys were taken, viz. on 10th, 16th and 20th March; on the 30th of that month she suffered from the hurricane, and on 14th April a fourth survey was held and repairs recommended.  On 6th July the plaintiff gave notice to the defendants that he had advice from the Isle of France, dated 12th April, that his ship had put into that port in distress, and that she had subsequently suffered great damage from a hurricane, in consequence of which he abandoned to the defendants, the underwriters, so much of his interest in the vessel as they had insured, and that he would claim from them thereon a total loss.

On 7th May, 1819, the repair of the vessel was commenced at the Isle of France under the direction of the master, and completed by the 28th June.  The expense of the repair was upwards of $14,000, and the whole disbursements of the vessel at Port Louis upwards of $20,000.  A part of the cargo belonging to the plaintiff was sold under the direction of the court of admiralty of the Isle of France to defray the expense of repairs; the amount of the proceeds was $10,972,50; more of the cargo could not have been sold without great sacrifice; the master therefore borrowed $8,925 upon *respondentia*, and executed a respondentia bond, in which he also bound himself personally for the payment of the money.  The residue of the cargo was re-shipped, and other goods taken on board on freight, and on 28th June, 1819, the ship being tight, staunch and strong, set sail from Port Louis bound to a port in Holland.  She arrived in safety at Antwerp on 1st October, 1819, where her cargo was delivered in good order to the consignees, &c.

At the circuit, a verdict was taken by consent for the plaintiff for a nominal sum, subject to the opinion of the

supreme court on a case to be made, the amount of the verdict to be increased or diminished as the court should direct ; either party to be at liberty to turn the case into a special verdict or bill of exceptions. The supreme court, in February term, 1825, decided that as the master had repaired the vessel, and she was in the actual prosecution of her voyage at the time of the abandonment, although that fact was not then known to either the plaintiff or the defendants, the right to abandon was gone and the assured was entitled to recover only as for a *partial loss.*

The other *half* of the vessel was insured by the New-York Insurance Company, against whom also a suit was brought. The same questions arose in both cases. That cause was argued in the supreme court by D. B. Ogden and Thomas Addis Emmett, for the plaintiff, and by J. Duer and G. Griffin, for the defendants, and a similar decision had, or rather the opinion of the court in that case is the opinion of the court in this, the decision in this cause being founded upon the reasons assigned in that. For a report of the *arguments* of counsel and the *opinions* of the judges in that cause, the reader is referred to 4 Cowen, 222 to 249.

A writ of error was brought by the plaintiff below to reverse the judgment of the supreme court. The cause here was argued by

*P. A. Jay & D. B. Ogden,* for the plaintiff, and by

*Ogden Hoffman & J. Duer,* for the defendants.

*For the plaintiff in error,* it was insisted that the right of abandonment depended upon the fact whether the damage sustained by the vessel amounted to one half her value, and although notice of the abandonment was not given until after repair, the plaintiff's claim as for a *total loss* was not affected. Having given notice as soon as he received information of the disaster, on the presumption that the damage would exceed fifty per cent. and the result proving that the vessel was injured beyond half her value, the plaintiff's right was perfect, and could not be divested by the act of the master in repairing the vessel. Had the injury occurred on the coast

of this country and an abandonment been made immediately after receiving notice of the event, there could have been no doubt of the right of the plaintiff to claim as for a total loss; and having given notice as soon as advised of the disaster, the claim of the plaintiff is equally unquestionable under the circumstances of this case. His right depends upon the extent of the damage and upon the fact of giving notice without delay, which right cannot be impaired by any act of the master subsequent to the happening of the loss, who, from that moment, became the agent of the underwriters. The counsel contended that there was a clear and manifest distinction between this case and that of an abandonment for capture, where a re-capture takes place before the bringing of the action, as in *Bainbridge* v. *Nelson*, (10 East, 329.) In that case, there was a mere interruption of the voyage for a few days; here, there was a total loss of the thing insured, at least a technical total loss, which, for the purpose of abandonment, is equivalent to an actual total loss.

*For the defendants in error.* The rights of the parties must be governed by the circumstances as they exist in fact, and not as they are supposed to exist at the time of the abandonment. A policy of insurance is a contract of indemnity, and if the assured is made good for the damage actually sustained, he has no farther claim. An abandonment may be made where there is a probability of such loss as would entitle the party to claim as for a total loss, but nothing can be asked under it, if, before the abandonment, the property is restored to the situation in which it was previous to the happening of the event on which the abandonment is founded. This is admitted to be the law in the case of a re-capture, and the reason of the rule equally applies where the property is restored by repair.

For a more full view of the grounds relied on by the counsel on both sides, the reader is referred to the case already quoted of 4 Cowen, 222.

The following opinions were delivered :

By the CHANCELLOR. It is a well settled rule of American insurance law, that if a vessel is damaged by any of the perils insured against, so that the necessary repairs to restore her to her former state and render her sea-worthy will exceed three fourths of her value before the disaster, the owner is not bound to repair, but may abandon as for a total loss. The injury is usually spoken of as an injury to more than half her value, because, in estimating the repairs, one third of the amount is deducted, on the ground that the vessel is made more valuable by substituting new materials for old. Thus, if a ship worth $4000 is so injured as to require $3000 to be expended in repairs, it is estimated that the new materials used will make the vessel worth $5000 when repaired; and deducting one third new for old, the expense of restoring the vessel to her former value will be $2000, or one half.

There is no doubt in this case that a technical total loss *had occurred, and that the assured abandoned immediately* on hearing of the disaster. But the vessel being in the Isle of France, the master had caused her to be repaired, and she was actually in good safety and on her voyage before the owner and underwriters in New-York had heard of the disaster. ✓ The right to abandon depends on the state of facts at the time of the abandonment; not upon the facts which had previously existed, or on the facts which the parties then supposed to exist.✓ (*Queen* v. *The Union Ins. Co.*, 2 Wash. C. C. Rep. 335. *Church* v. *Bedient*, 1 Caines' Cases in Error, 21.)

The question presented for our decision here is, whether the repair of the vessel, without the direction or knowledge of either party, before the abandonment was actually made, deprived the assured of the right to abandon. I cannot find that the principle of a technical total loss of the vessel, in consequence of damage to the half her value, has ever been adopted or acted on in England. We must therefore resort to the decisions of the courts of our own country on this question, and to the adjudications both here and in England in analogous cases. The precise question now under consideration does not appear to have arisen previous to this time in the courts of this state.

In *Coolidge* v. *The Gloucester Mar. Ins. Co.,* (15 Mass. Rep. 341,) which came before the supreme court of Massachusetts, the vessel was injured to more than half her value and repaired by the master. Two or three days before the repairs were completed, the assured not knowing of the repairs, abandoned both vessel and freight. The underwriters accepted the abandonment of the vessel and paid the loss, but refused to accept the abandonment of freight. The master, knowing nothing of the abandonment, pursued his voyage and earned the whole freight. In an action upon the freight policy, the assured were permitted to recover as for a total loss, deducting salvage. The right to recover in that case might have been sustained on different grounds from those on which it was placed by the court. But if the principles adopted in that case can be sustained, a technical total loss of a vessel, arising from damage to a moiety of her value, cannot be converted into a partial loss by a repair of the vessel by the master. Putnam, Justice, in delivering the opinion of the court, says, " To all legal purposes, after the constructive total loss, the ship repaired and rebuilt at an expense exceeding half her value must be considered a new ship; as much so, to every intent, as if the former owners and the insurers of her had procured a new keel, and had wrought up the iron and timbers which could have been obtained into a veseel of a different kind and form." I apprehend the principle cannot be sustained to this extent, as it would deprive the owner as well as the master of the right to repair in such a case. Neither the master or the owner has the right to build a new vessel at the expense of the underwriter, even with the aid of materials from the wreck of the old vessel.

The precise question now under consideration came before the circuit court of the United States for the first circuit in *Humphreys* v. *The Union Ins. Co.,* (3 Mason's Rep. 429.) The facts were substantially the same as in this case ; and it was there decided that the repair of the vessel by the master took away the right of the owner to abandon. Judge Story puts his decision in that case on the ground that the master acted as the agent of the assured in making the repairs. The

ALBANY,
October, 1829.

Dickey
v.
American Ins.
Company.

counsel for the plaintiff in this case contend that the master acts for the benefit of whoever it may concern, and is not to be considered the agent of the assured so as to deprive him of the right of abandonment, without his knowledge or consent. If the master is the agent of the assured in such a case, it would seem to follow that an election to repair, and the actual commencement of the operation, would deprive the owner of the right to abandon, even before the repairs were completed. But I apprehend the question whether the master is the agent of the owner or of the underwriter, depends upon the fact of a valid abandonment during the continuance of the total loss. If a valid abandonment is made, it relates back to the time of the disaster; and as to all acts of the master, done in good faith and in the discharge of his duty, he is, in that case, to be considered the agent of the underwriter. While it is doubtful whether the assured will exercise his right of abandonment or not, the lawful acts of the master cannot destroy the right to abandon on the ground that he acts as the agent of the assured. But if the master, in the exercise of his legitimate duties as the agent of whom it may concern, has converted a total into a partial loss before abandonment, the fact that the loss is no longer total takes away the right to abandon; and the result is the same if a total loss is converted into a partial one by the acts of a stranger, as in the case of recapture. While the result is doubtful, the master is not the exclusive agent of either party; but when the rights of the parties are fixed, the result ascertains whether he was the agent of the underwriters or of the assured. If the vessel is abandoned while the loss continues total, all the intermediate acts of the master are the acts of the underwriters; but if the property be restored before abandonment, the right to abandon is gone, and the acts of the master will be considered the acts of the assured.

Had the repairs in this case been made by the underwriters themselves, the assured could not have abandoned after the vessel was in safety, if the voyage had not been lost; but a mere offer to repair would not deprive him of the right. And if the master is to be considered the agent of the underwriters in making the repairs, the result is the same. Here

the assured has never been deprived of the actual possession of his vessel. There probably existed a lien upon her, in favor of the owners of the cargo, for the amount of goods which had been sold and pledged to raise money for the repairs. At the time of abandonment the vessel was in safety, and there was no incumbrance upon her that could authorize a detention which might break up the voyage. The actual damage which had been or would be sustained by the disaster, was reduced to a matter of mere computation, and was but a partial loss. The principle of adjustment adopted by the supreme court affords a fair indemnity to the owner of the ship. If he choose to be his own insurer on the freight or cargo, the underwriters are not liable for any loss he may have sustained upon either, and which is not covered by the adjustment in this case.

In *Holdsworth* v. *Wise*, (1 Man. & Ry. 673,) the ship was actually lost, being abandoned by the master and crew at sea as derelict. Although she was found and saved by others at the risk of their lives, and finally arrived in port, the salvage and other expenses were more than her value; and the assured was not entitled to the possession until that amount was paid. The ship therefore continued totally lost to him at the time of abandonment.

I think the plaintiff's right to abandon for a total loss was divested by the repair of the vessel, and that the judgment of the supreme court should be affirmed.

By Mr. Senator S. ALLEN. This is an important case, and I have taken some pains to ascertain, from the limited means within my reach, the general principles which have governed in deciding questions similar to the one under consideration.

It appears to be a general rule, that the right to abandon must depend on the situation of the thing abandoned at the time the offer is made. Thus, if a vessel shall be captured, detained by embargo, or seized, and she be released or restored previous to abandonment, the right to abandon is lost by the fact of restoration, &c.

ALBANY,
Dec. 1829.

Dickey
v.
American Ins.
Company.

ALBANY,
Dec. 1829.

Dickey
v.
American Ins.
Company.

I have not been able to discover any decision of the courts of this state embracing precisely the same state of facts as those of the case under consideration; but the principle involved in cases of capture and restoration, appears to me equally applicable to cases by shipwreck and restoration by being repaired. The ground upon which the decisions are based, as I apprehend, are, that no abandonment can be valid so long as the thing insured is not taken from the control of the owner, as it would be if the detention by capture, embargo or shipwreck existed at the time of the abandonment.

In case of capture, a restoration previous to the time of abandonment, although unknown to be assured, takes away the right to abandon. (*Church* v. *Bedient*, 1 Caine's Cases in Error, 21.) And upon the same principle, in the case of shipwreck, the vessel having been repaired before the abandonment and thus restored to a state which enables her to perform all that was warranted by the insurers, and although the fact was unknown by the assured, he still loses his right to recover for a total loss. This principle is clearly recognized in the case of *Humphrey* v. *The Union Insurance Company*, as decided by the circuit court of the United States. (Phillips on Ins. 401.) A ship upon a voyage from Messina to Boston, sustained sea damage which made it necessary to put into Lisbon, where the master had her repaired at an expense exceeding half her value as the assured alleged, and the vessel was bottomried for expense. The assured abandoned in Boston immediately on hearing of the accident, which intelligence they received about three or four days before the vessel arrived at Boston. On the arrival of the vessel she was sold under a process instituted upon the bottomry bond, and the proceeds of the ship and freight were not sufficient to satisfy the bond. A bill also had been drawn on London by the master on account of the expense of repairs, which was not paid. Mr. Justice Story held that this was a *partial* loss. He said that the assured by electing to repair, lost his right to abandon.

The cost of repairing the ship was more than half her value, and had an estimate of the expense been ordered by the captain and an abandonment determined on, instead of adopt-

ing the advice of the surveyors to repair, the assured would, in accordance with the settled law in such cases, as I view it, recover for a total loss; but, instead of this, the vessel is fully repaired and in pursuit of her voyage several days before the abandonment is determined on or made known to the underwriters.

Under the circumstances of this case it may perhaps be deemed a hardship upon the assured that he is denied the privilege of abandonment, and cases may also arise under the rule equally hard upon the underwriters; but if the courts were to attempt to shape their decisions so as to meet every case of hardship that may occur under marine risks, there might be less reason to be satisfied with the result than there will be under a general rule which, though in particular instances it may prove inconvenient, will, in the main, operate as equitably as the nature of such cases will admit.

Having arrived at the conclusion that the plaintiff in error ought to recover only for a partial loss, it is unnecessary to notice any other matter raised by the points in this cause. I am of opinion, therefore, that the judgment of the supreme court ought to be affirmed.

And this being the unanimous opinion of the court, the judgment of the supreme court was thereupon affirmed with costs.